MARC X. CARLOS
California State Bar No. 132987
**MARC CARLOS LAW, A.P.C**
424 F Street, Suite 205
San Diego, California 92101
Telephone:  (619) 702-3226
Facsimile:  (619) 702-5415
marc@marccarloslaw.com

CHARLES L. REES
California State Bar No. 200682
**LAW OFFICE OF CHARLES L. REES**
424 F Street, Suite 205
San Diego, California  92101
Telephone:  (619) 239-9300
Facsimile:  (619) 702-5415
charlesreeslaw@gmail.com

Attorneys for Plaintiff
JAESA VAUGHN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAESA VAUGHN, an individual, <br><br> Plaintiff, <br><br> v. <br><br> JOSHIMAR RENTERIA, and DOES 1-50, inclusive. <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR:** <br><br> 1) *Bivens:* Eighth Amendment <br> 2) *Bivens:* Failure to Supervise <br> 3) False Imprisonment <br> 4) Intentional Infliction of Emotional Distress <br> 5) Assault <br> 6) Sexual Battery <br><br> **DEMAND FOR JURY TRIAL** |

COMPLAINT

# I.

## INTRODUCTION

1. Jaesa Vaughn is the survivor of sex crimes committed against her while she was incarcerated at the federal women's prison camp at FCI, Victorville. On or about September 15, 2022, federal correctional officer Joshimar Renteria forcibly digitally penetrated Jaesa Vaughn and attempted to rape her vaginally in a prison laundry room storage closet from which she could not escape.

2. Joshimar Renteria was the officer in charge of the commissary and laundry room in which Jaesa Vaughn worked. The forced digital penetration and attempted rape by Joshimar Renteria was the culmination of weeks of numerous sexual assaults and batteries by Joshimar Renteria, including forcibly kissing her with his tongue, putting his hands under her underwear and inside her buttocks, placing his hand on her vagina, and smacking her hard on her buttocks. These assaults continued despite Jaesa Vaughn's numerous attempts to stop them.

3. In the days leading up to the forced penetration and attempted rape, Joshimar Renteria showed her pornography, told her he wanted to "fuck her," and told her he was going to call her out for "special duty" so he could sneak her out of the prison camp in his truck so they could have sex at his house. When Jaesa Vaughn told him she did not want to leave the prison camp with him he told her that he was her "boss" and that she would have to "follow orders" if he called her out for "special duty."

4. The conversation regarding sneaking Jaesa Vaughn out of the facility took place on or about September 14, 2022. It was on or about the next day that Joshimar Renteria forcibily penetrated Jaesa Vaughn and attempted to rape her in the storage closet. Officer Joshimar Renteria is approximately 6'3" and weighed 200 pounds. Jaesa Vaughn is 5'4" and weighed 160 pounds.

5. Jaesa Vaughn was released from prison on August 1, 2024. She now seeks justice for the crimes committed against her by federal correctional officer Joshimar

Renteria. On August 28, 2024, she submitted a written notice of claims against the United States to the Federal Bureau of Prisons pursuant to the Federal Tort Claims Act under 28 U.S.C. § 2675. She now files the instant Complaint to address the actions of federal correctional officer Joshimar Renteria under both *Bivens* and the laws of the State of California. Plaintiff will amend this Complaint to add claims under the Federal Tort Claims Act when the claims become ripe.

## II.

## JURISDICTION AND VENUE

6. This action is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 288 (1971) for the violations of Plaintiff's constitutional rights. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

7. Venue in this Court is proper under 28 U.S.C. § 1392. The unlawful acts, omissions, and practices alleged herein occurred at FCI, Victorville, a federal prison, which is located in San Bernardino County, California, which is within the Central District of California.

8. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III.

## PARTIES

9. Plaintiff Jaesa Vaughn was an inmate at FCI, Victorville's women's camp from on or about February 24, 2022, to September 20, 2022. She was released from custody on August 1, 2024.

10. Defendant Joshimar Renteria was a federal correctional officer with the Federal Bureau of Prisons and was employed at FCI, Victorville women's camp from at least August 30, 2022, to September 20, 2022.

11. At all relevant times to this complaint, Defendant Does 1-50 were officials, agents, employees, contractors, and/or sub-contractors of the Federal Bureau of Prisons.

12. At all relevant times, Defendants were acting in their professional capacity within the course and scope of their employment.

13. Plaintiff is ignorant of the true names and/or capacities of Doe Defendants 1-50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff believes and alleges that each of the DOE Defendants is legally responsible and liable for the incidents, injuries, and damages set forth herein.

## IV.

## FACTUAL ALLEGATIONS

14. All prior paragraphs are incorporated herein by this reference.

15. Jaesa Vaughn arrived at the women's prison camp at FCI, Victorville ("FCI Victorville") on or about February 24, 2022. In May of 2022, she was hired by Correctional Officer Francisco Hernandez ("CO Hernandez") to work in the Laundry Room / Commissary.

16. When CO Hernandez was in charge of the Laundry Room / Commissary, Ms. Vaughn split her time between both. In August 2022, CO Hernandez suffered an injury and went on leave. Correctional Officer Joshimar Renteria ("Defendant Renteria") and another Correctional Officer were brought in to replace CO Hernandez. Defendant Renteria was in charge of the Commissary while the other Correctional Officer was in charge of the Laundry Room.

17. While Ms. Vaughn had split her time between the Commissary and Laundry Room under CO Hernandez' supervision, Defendant Renteria insisted that she work exclusively at the Commissary. Defendant Renteria had the key to the Commissary and controlled when she could leave.

18. Defendant Renteria began sexually assaulting Ms. Vaughn soon after taking over at the Commissary.

19. On or about August 30, 2022, Defendant Renteria and Ms. Vaughn were alone in the Commissary. Ms. Vaughn was leaning over a counter while completing a work task. Defendant Renteria walked up to her and said, "Wouldn't it be funny if I smacked your ass?" Ms. Vaughn was embarrassed by the question and didn't know how to respond. Defendant Renteria is 6'3" and weighed approximately 220 pounds. Ms. Vaughn is 5'4" and weighed 160 pounds. He was her boss and had the power to get her fired from her job and/or transferred out of the low security prison camp to a less desirable facility. To avoid confrontation - and the consequences that could potentially result - she responded, "it wouldn't be the first," and continued doing her work with her head down. Seconds later, Defendant Renteria smacked her butt hard with the palm of his hand.

20. The smack by Defendant Renteria hurt Ms. Vaughn physically. Mentally, she was in complete shock and felt as if she had left he body. Ms. Vaughn continued to work and said nothing. Seconds later he smacked her butt two more times in rapid succession, each one has hard as the first. On the third smack Defendant Renteria grabbed Ms. Vaughn's arm and pulled her around to him and forcibly kissed her with his tongue in her mouth. Ms. Vaughn was unable to resist. Just seconds after he began forcibly kissing her, the correctional officer in charge of Laundry unlocked the door to the Commissary and walked in with female inmates who worked under his supervision. Defendant Renteria stopped kissing Ms. Vaughn and moved away from her when he heard the door being opened.

21. When the female inmates from Laundry finished their business in the Commissary, they were escorted back to Laundry by the correctional officer. Ms. Vaughn was still in shock. She was also concerned. She believed Defendant Renteria might write her up or take action against her if he believed she would report what happened. In other

words, Ms. Vaughn believed Defendant Renteria would strike first to discredit any complaint she made about his conduct.

22.     Ms. Vaughn entered his office within the Commissary and told him "don't worry," and that she "wouldn't say anything."  Ms. Vaughn then left is his office and walked down the hall.

23.     Defendant Renteria followed her and pushed her up against a wall where she was cornered.  He then proceeded to place his hands on her buttocks, "cuffing" her buttocks with both hands and lifting her up to his face where he forcibly kissed her.  Ms. Vaughn pushed him away and told him "Stop!"  She told him he was "crazy," and that she was "not worth it."  Ms. Vaughn was terrified.

24.     On or about August 31, 2022, Officer Hernandez entered the Commissary while Defendant Renteria was out.  It was around noon and they were alone in the Commissary.  Officer Hernandez told Ms. Vaughn not to be alone with Defendant Renteria. He also told Ms. Vaughn that he spoke with Defendant Renteria and warned him not to be alone with her.  CO Hernandez was stern in his tone as he spoke to Ms. Vaughn.  When Ms. Vaughn asked CO Hernandez "Why are you telling me this?" he responded, "Why do you think?"

25.     On or about September 1, 2022, Ms. Vaughn was alone with Defendant Renteria in the Commissary.  Once again, she had no control over where she worked or when she would be alone with Defendant Renteria.  It was the early afternoon. She was working in the office on commissary sheets when he began touching her without consent: rubbing her and pinching her thighs, hips, and butt.  To get him to stop she mentioned the conversation CO Hernandez had with her the day before. Defendant Renteria acted shocked and stated that CO Hernandez had no such conversation with him. Ms. Vaughn asked him if he thought he should stop (groping, kissing and touching her) given CO Hernandez' conversation with her.  Defendant Renteria again responded that CO Hernandez never said anything to him and that he wasn't worried.  Right after that conversation he kissed her and

put his tongue in her mouth.  Ms. Vaughn told him she had to go.  Defendant Renteria then let her leave after giving her a "goodbye kiss."

26.   On or about September 5, 2022, Ms. Vaughn was alone with Defendant Renteria in the Commissary.  It was a Monday morning.  Defendant Renteria told Ms. Vaughn that he missed her and thought about her over the weekend, telling her he "missed his eye candy."  While they were alone he kissed and groped her on various parts of her body several times.  She resisted best she could but could not prevent him from kissing and groping her.

27.   On or about September 7, 2022, Ms. Vaughn was alone with Defendant Renteria in the Commissary. It was morning. Defendant Renteria took Ms. Vaughn into his office where he took out his cell phone and showed her pictures of herself from her Instagram account. The photos included Ms. Vaughn wearing a dress, bathing suit, and jean shorts.  While showing her the photos he told her, "I want to fuck you," and that she was "so sexy."  He also told her he couldn't wait till she was "out of this place" so he could "show her all the things" he wanted to "do to her."  While showing her the photos and making these statements he rubbed her leg.  Ms. Vaughn felt trapped.

28.   Some time after lunch, on that same date, Defendant Renteria cornered Ms. Vaughn outside his office and kissed her.  Defendant Renteria stopped kissing her when they heard a female voice say, "Hey guys."  It was a female inmate.   The inmate had entered the Commissary through the back door which had not been locked on this date. Defendant Renteria did not say anything to the inmate witness about the kiss.  As Ms. Vaughn walked back to her dorm with the inmate who witnessed the kiss and another inmate, the witness confirmed to Ms. Vaughn that she witnessed Defendant Renteria kissing her.   Ms. Vaughn confirmed what had been happening and told both female inmates to try when they could to not leave her alone with Defendant Renteria.  She also told them not to tell anyone as she feared she could face retaliation.

COMPLAINT

7

29. On or about September 8, 2022, Ms. Vaughn was alone with Defendant Renteria in the Commissary. When he first saw her he asked if "everything was good." Ms. Vaughn understood that he was asking whether the witness was going to report him. She replied, that everything was "okay."

30. Later that same day, Ms. Vaughn was seated in Defendant Renteria's office working on the computer. Defendant Renteria came from behind her and placed his hand in the back of her pants. He put his hand under her panties and pushed his hand towards her vagina.

31. Ms. Vaughn was terrified and in shock. She attempted to place more weight on the seat to prevent his hand from reaching her vagina. Defendant Renteria kept pushing his hand down her pants, however, spreading her buttocks apart with his hand to more easily reach her vagina. With his hand inside her buttocks, he was able to reach her vagina and place his fingers around her vaginal opening. As Defendant Renteria attempted to place his fingers inside Ms. Vaughn, the correctional officer in charge of Laundry entered the Commissary. Defendant Renteria quickly removed his hand and "jumped up." He then walked out of the office and acted as if nothing had happened, engaging the other correctional officer in normal conversation.

32. From on or about September 12, 2022, to September 14, 2022, Defendant Renteria sexually abused Ms. Vaughn daily.

33. Defendant Renteria used every opportunity he could to send the other inmates to the Laundry Room so he could be alone with Ms. Vaughn. When they were alone he forcibly kissed Ms. Vaughn and shoved his tongue into her mouth. He put his hands down her pants and under her panties, leaving one hand "cupping" her bare buttocks for long periods of time.

34. Defendant Renteria picked Ms. Vaughn up, or attempted to pick her up, several times by grabbing her buttocks with both hands and pulling her off her feet and up

his body to his mouth where he would forcibly kiss her.  Defendant Renteria also pinched and caressed her thighs, buttocks, legs, and her breasts outside her shirt.

35.    Ms. Vaughn told Defendant Renteria  to "stop" several times to no avail.  She tried to make it harder for him to put  his hand down her pants by pushing all her weight on the seat.  She tried to make it harder for him to pick her up by using "dead weight."  Other times she did nothing, counting to herself, or thinking of other things to pass the time until the ordeal was "over."  Thinking if she didn't fight or resist, it would be over faster.  Ms. Vaughn has described these moments as "out of body experiences" in which she felt numb.

36.    Defendant Renteria did not always wait until he was alone with Ms. Vaughn, however, to assault her.  If others were in the Commissary he would at times wait until he thought nobody was looking and then smack her buttocks or pinch her.

37.    On or about September 14, 2022, he pulled out his cell phone in his office in the Commissary and showed pornographic images of an FCI, Victorville inmate who was a "pornstar" to Ms. Vaughn and other female inmates.  The images were thumbnail images of videos of the female inmate engaged in sexual acts.

38.     Later that same day, when Defendant Renteria and Ms. Vaughn were alone in his office, he played a video of the female "porn star" inmate engaged in a sex act.

39.    On or about that same day, Defendant Renteria told Ms. Vaughn that he had a plan for them to leave FCI, Victorville so they could engage in sexual intercourse at his house.  He told Ms. Vaughn that he would call her out for "special duty" and that she could sneak into the back of his truck that would be in the back of the Laundry Room loading area. Ms. Vaughn  told Defendant Renteria she would not leave the facility with him.  She told him he was "crazy," and that she would not risk getting an escape charge and take the chance of getting sent to another prison.  Defendant Renteria responded that he was her "boss" and that she would have to "follow orders" if he called her out for special duty. Defendant Renteria told her that this would take place some future date on a Friday.

40. At the end of her shift, Ms. Vaughn walked behind the inmates from the Laundry Room on their way back to their dorms. Defendant Renteria followed from behind and grabbed her by her pant waistband, pulling her against his body. He quickly grabbed her around the waist and kissed her neck, whispering that he "appreciated" her "hard work." The other inmates walking ahead of her could have seen what was happening if they looked behind them.

41. On September 15, 2022, Defendant Renteria forcibly penetrated Ms. Vaughn and attempted to rape her. On this date, the dryers in the Laundry Room were not working properly. All the inmates were working in the Commissary. Defendant Renteria told Ms. Vaughn that they (the two of them) needed to go to the Laundry Room to try and fix the dryers.

42. As they entered the Laundry Room, Defendant Renteria failed to lock the back door. Ms. Vaughn walked quickly to the storage closet in an attempt to reset the dryers before CO Renteria entered the storage closet. The storage room closet ran the length of the wall on which washers and dryers were placed. If a machine malfunctioned, the machine in question could be accessed by walking into the storage room closet.

43. As Ms. Vaughn worked to reset the dryers, Defendant Renteria entered the storage closest, shut the door and walked up behind her. He immediately pulled her around and started kissing her. He puts his hands on her breasts and then lifted her shirt and bra. CO Renteria proceeded to put his mouth over her breasts and suck on her nipples. Ms. Vaughn was shocked, embarrassed, and disgusted. Mostly, however, she was in fear. Fear of being raped. Fear of being hurt by man who was 60 pounds heavier and 8 inches taller. Fear of a man who controlled her life inside the prison walls and could have her written up or transferred her to another facility.

44. Ms. Vaughn told Defendant Renteria to stop several times. He did not. While she tried to pull her shirt down, he pulled down her pants and underwear. He pushed her against a hot dryer, rubbing his erect penis through his pants onto her vaginal opening. His

body blocked the door to the storage closet.   Every time she tried to pull up her pants he pulled them back down.  Defendant Renteria then put two of his fingers inside her vagina, thrusting in and out several times.  He then took out his fingers, licked them and told her, "You taste good."  Defendant Renteria then started to take off his pants.  Ms. Vaughn pushed her body into him with all her weight in an attempt to get him off her and to create enough space between him and the dryer to make an escape.  Each time she tried, however, he pushed her back on the dryer and continued to attempt to take off his pants.  Ms. Vaughn repeatedly told him "no!" and to "stop!"  He did not.  Finally, Ms. Vaughn heard a noise from the other side of the storage closet.  She pushed off hard with all her weight and told him someone was outside.  This time, Defendant Renteria stopped.  Ms. Vaughn pulled up her underwear and pants, pulled her shirt over he breasts and waited for Defendant Renteria to move away from the door so she could exit.

45.    Standing on the other side of the door was a female inmate.  The female inmate looked at Defendant Renteria and said, "You got me, right?"  She knew that Defendant Renteria worked shifts at the Victorville men's penitentiary and told him she had friends in the penitentiary she wanted to be "pen pals" with.  She wrote down the information regarding the specific inmates and handed it to Defendant Renteria.

46.    The female inmate later told Ms. Vaughn that she heard everything that was going on in the storage closet.  She further told Ms. Vaughn to make sure she (the female inmate) didn't get fired and that if she wanted something ordered from the Commissary that she "better get it."

47.    September 15, 2022, was the last day Ms.  Vaughn was sexually abused by Defendant Renteria.  The day after Defendant Renteria forcibly penetrated Ms. Vaughn and attempted to rape her, he told her that he wished he had condoms.

48.    Word spread about the incident between Ms. Vaughn and Defendant Renteria.  On September 20, 2022, a fight broke out between Ms. Vaughn and another inmate who

taunted her about the incident.  That same day Ms. Vaughn was removed from Victorville Women's Camp and shipped to Metropolitan Detention Center, Los Angeles ("MDC").

49.    Over the next 18 months she was transferred to several different facilities until she was finally released from custody on August 1, 2024.

50.    Upon information and belief, it is alleged that supervising officers at FCI Victorville knew that Defendant Renteria was a sexual predator yet failed to act to protect Ms. Vaughn.

## V.

## DAMAGES

51.    Plaintiff was physically, mentally, and emotionally injured as a direct and proximate result of Defendants' actions.

52.    Plaintiff is entitled to recover damages for the pain, suffering, and mental trauma she endured as a result of the violations described herein.

### FIRST CAUSE OF ACTION
*Bivens* **Cause of Action for Violation of Eight Amendment**
(**Against Defendant Renteria**)

53.    All prior paragraphs are incorporated herein by this reference.

54.    Defendant Renteria was at all relevant times acting under the color of federal authority.

55.    Under the Eighth Amendment of the United States Constitution, Plaintiff has a constitutionally protected right to be free from cruel and unusual punishment.  Sexual abuse of a prisoner is a violation of the Eighth Amendment.

56.    Federal law recognizes that there is no scenario in which an inmate can give consent to sexual contact, harassment and abuse by a correctional officer.  Plaintiff did not consent to any of the sexual harassment, sexual contact, and abuse initiated by Defendant Renteria.

57.    Defendant Renteria knew his conduct was prohibited as evidenced by the fact that the sexual harassment, sexual touching, spanking, forcible digital penetration, and

attempted vaginal rape took place when he was alone with Plaintiff in locations such as the Commissary, his office, and in the storage closet.

58. Plaintiff lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy for the actions alleged herein.

59. The actions by Defendant Renteria described herein violated Plaintiff's rights under the Eighth Amendment.

60. Defendant Renteria's conduct legally, proximately, foreseeably, and actually caused Plaintiff to suffer injury, emotional distress, pain and suffering, unjust deprivation of her liberty and freedom, and further damages according to proof at the time of trial.

61. The conduct alleged herein was done with oppression, malice, and/or deliberate or reckless disregard of Plaintiff's constitutionally protected rights. As such, an award of exemplary damages against Defendant Renteria is warranted to deter him from engaging in similar conduct and to deter others by way of monetary punishment.

## SECOND CAUSE OF ACTION
### *Bivens* Failure to Supervise
### (Against Does 1-50)

62. All prior paragraphs are incorporated herein by this reference.

63. Supervising correctional officers at FCI Victorville had a duty to Plaintiff to properly supervise its employees who had contact with female inmates.

64. The failure of DOE Defendants 1-50 to properly supervise Defendant Renteria has legally, proximately, foreseeably, and actually caused Plaintiff to suffer the injuries described herein.

65. The conduct alleged herein was done with oppression, malice, and/or deliberate or reckless disregard of Plaintiff's constitutionally protected rights. As such, an award of exemplary damages against DOE Defendants 1-50 is warranted to deter them from engaging in similar conduct and to deter others by way of monetary punishment.

//

//

## THIRD CAUSE OF ACTION
### False Imprisonment
### (Against Defendant Renteria)

66.    All prior paragraphs are incorporated herein by this reference.

67.    Defendant Renteria had no legal authority under which to imprison Plaintiff in the Commissary and storage room closet.

68.    Defendant used his authority as a correctional officer to further imprison Plaintiff by preventing her from exiting the Commissary or storage closet while he sexually violated her.

69.    Plaintiff knew she was confined and without reasonable means of escape. Further, she did not consent to being confined by Defendant Renteria. Her confinement by Defendant Renteria was a significant factor in causing the harm described herein.

70.    The conduct alleged herein caused Plaintiff to be deprived of her rights under federal and state laws. The actions of Defendant Renteria have legally, proximately, foreseeably, and actually caused Plaintiff to suffer emotional distress, pain and suffering, unjust deprivation of her liberty and freedom, and further damages according to proof at trial.

## FOURTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against Defendant Renteria)

71.    All prior paragraphs are incorporated herein by this reference.

72.    While Plaintiff was incarcerated Defendant Renteria engaged in extreme and outrageous conduct that was done with the intent to cause Plaintiff emotional distress, or at the very least, with reckless disregard to the probability that it would cause her emotional distress.

73.    Defendant Renteria repeatedly sexually assaulted and abused Plaintiff. He forcibly inserted his fingers in her vagina and attempted to rape her vaginally.

74.    Plaintiff suffered severe emotional distress as a result of Defendant's actions.

COMPLAINT
14

75. Defendant's actions were a substantial factor in causing Plaintiff's emotional distress.

76. The conducted alleged herein caused Plaintiff to be deprived of her rights under federal and state laws. The actions of Defendant Renteria legally, proximately, foreseeably, and actually caused Plaintiff to suffer emotional distress, pain and suffering, unjust deprivation of her liberty and freedom, and further damages according to proof at trial.

## FIFTH CAUSE OF ACTION
### Assault
### (Against Defendant Renteria)

77. All prior paragraphs are incorporated herein by this reference.

78. Defendant Renteria acted with the intent to cause apprehension of immediate harmful or offensive conduct nearly every day in which he supervised her in the Commissary. Each day Plaintiff worked for Defendant Renteria she reasonably believed he was going to touch her in a harmful or offensive manner.

79. The conduct alleged herein caused Plaintiff to be deprived of her rights under federal and state laws. The actions of Defendant Renteria have legally, proximately, foreseeably, and actually caused Plaintiff to suffer emotional distress, pain and suffering, unjust deprivation of her liberty and freedom, and further damages according to proof at trial.

## SIXTH CAUSE OF ACTION
### Sexual Battery
### (Against Defendant Renteria)

80. All prior paragraphs are incorporated herein by this reference.

81. Defendant Renteria acted with the intent to cause harmful or offensive contact with the intimate parts of Plaintiff when he puts his hands on and inside her buttocks, on and inside her vagina, put his mouth on her breasts, and touched, groped and pinched various parts of her body.

82. The harmful or offensive conduct described herein was neither privileged or with consent.

COMPLAINT
15

83.     The harmful or offensive conduct described herein was unreasonable and caused Plaintiff physical and emotional discomfort.

84.     The conduct alleged herein caused Plaintiff to be deprived of her rights under federal and state laws.   The actions of Defendant Renteria have legally, proximately, foreseeably, and actually caused Plaintiff to suffer emotional distress, pain and suffering, unjust deprivation of her liberty and freedom, and further damages according to proof at trial.

**REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants as follows:

a.     General and special compensatory damages in an amount according to proof;

b.     Punitive damages as provided by law;

c.     Reasonable attorneys' fees and costs; and

d.     Such other and further relief as may appear just and appropriate.

DATE: August 30, 2024                    MARC X. CARLOS, A.P.C


                                         */s/ Marc X. Carlos*
                                         MARC X. CARLOS
                                         Attorney for Plaintiff


                                         LAW OFFICE OF CHARLES L. REES


                                         */s/ Charles L. Rees*
                                         CHARLES L. REES
                                         Attorney for Plaintiff

COMPLAINT

16
